Trust U/W of J. B. Roberts F/B/O - Keith B. Roberts: National Newark & Essex Bank and Alfred Roberts, Co-Trustees, et al.[1] v. Commissioner. Trust of Roberts v. Commissioner
Docket Nos. 1833-68 - 1835-68.
United States Tax Court
T.C. Memo 1970-57; 1970 Tax Ct. Memo LEXIS 304; 29 T.C.M. (CCH) 252; T.C.M. (RIA) 70057; March 4, 1970, filed. Thomas W. Kelly, Richard R. Dailey and Lawrence T. Warble, 55th Floor, One Chase Manhattan Plaza, New York, N. Y. for the petitioners. Alan M;stark, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in income tax for the fiscal year ending September 30, 1965 in respect of each of the petitioners, as follows: Docket No. 1833-68, Trust U/W of J. B. Roberts F/B/O - KeithB. Roberts;
National Newark & Essex Bank and Alfred Roberts, Co-Trustees
$192,319.00
Docket No. 1834-68, Trust U/W of J. B. Roberts F/B/O - JohnP. Roberts;
National Newark & Essex Bank and Alfred Roberts, Co-Trustees
194,123.07
Docket No. 1835-68, Trust U/W of J. B. Roberts F/B/O - William B. Roberts;
National Newark & Essex Bank and Alfred Roberts, Co-Trustees
140,643.64
*305 These trusts will sometimes hereinafter be referred to as "Keith's trust", "John's trust", and "William's trust", respectively. The sole matter in controversy involves the proper basis to be used in computing the gain arising from the sale on July 12, 1965 by each of the petitioners of all their shares of stock (common and preferred) in Block Drug Company, Inc. to that corporation. Prior to December 19, 1956, that corporation was known as Wernet Dental Mfg. Co., Inc. ("Wernet"), and it is not to be confused with another corporation known as "Block Drug Company, Inc.", which changed its name to "Block, Inc." on February 1, 1955, and, after a further change in name, was completely liquidated on November 6, 1963. The shares of stock that are the subject of the present controversy will be referred to hereinafter as "Wernet" stock, and were acquired (either directly or through stock splits or nontaxable stock dividends) by each of the trusts as residuary legatees from the estate of Josephine Betty Roberts, who died on October 10, 1953. Each trust was established for the benefit of one of decedent's three minor sons. It is agreed by the parties that the proper basis to be used in computing *306 the gain on sale is the fair market value of the stock at the date of death. At the time of the decedent's death 253 she owned 12,236.67 shares of Wernet preferred stock and 623.33 shares of its common stock. Her holdings were eequalo one-third of the outstanding common and approximately one-third of the outstanding preferred; her two brothers, Leonard N. and Melvin A. Block, owned the remaining two-thirds of the common in equal amounts and substantially all of the remaining two-thirds of the preferred in approximately equal proportions. The controversy herein arises because the petitioner-trusts, on their respective income tax returns for the fiscal year ending September 30, 1965, used a much higher "cost" basis for the stock than the amount at which such stock was valued upon the settlement of the estate tax liability in respect of the decedent's estate in late 1957. Petitioners' position depends upon a new, retroactive "appraisal" of the value of the stock as of the date of decedent's death, October 10, 1953, while the Government's position is that the fair market value of the stock as of that date is in fact not in excess of the value agreed upon between its representatives *307 and the representatives of the estate in 1957. Alternatively, the Government contends that the petitioners are precluded from claiming the higher basis by reason of estoppel or some cognate doctrine referred to as "quasi estoppel." The parties have filed an extensive stipulation of facts and have presented voluminous evidence in addition thereto. Since our findings as to value, hereinafter stated, support the Government's principal position, we do not pass upon the so-called estoppel issue. The valuation issue is entirely factual, and no useful purpose would be served by a comprehensive statement of the evidence or a detailed analysis thereof. We have based our findings on the entire record, and, at the conclusion of the trial, when we announced our findings, we pointed out some of the considerations that we took into account. We set forth here only the bare framework of the case. Wernet was incorporated in 1923 to continue the manufacture and sale of "Dr. Wernet's Plate Powder," an adhesive for holding artificial dentures in place. It from time to time acquired, by purchase or otherwise, a number of wholly owned subsidiaries. The activities of Wernet and its subsidiaries involved *308 primarily the manufacture and sale of various dental products, including Dr. Wernet's Plate Power, Dr. Wernet's Plate Brush, Wernet's Dentu-Creme, Poli-dent, Poli-grip, Dentu-grip, Green Mint (a mouth-wash), Omega Oil, Poloris Poultice, and Pycopay Brush. Some of these products were distributed domestically through a related corporation, Block Drug Company, Inc., which was referred to above. Prior to December 1950, Wernet had outstanding only common stock, in the aggregate amount of 1,870 shares. In December 1950 it distributed as a dividend to the three holders of its common stock its newly issued 4 i/2 percent cumulative preferred $100 par value stock. As previously noted, the decedent owned one-third (623.33 shares) of the outstanding common and approximately one-third (12,236.67 shares) of the outstanding preferred at the date of her death, and her two brothers owned the remaining two-thirds of the outstanding stock of both classes in approximately equal proportions. There do not appear to have been any sales of the stock of either class of this closely held corporation at about the time of decedent's death. The decedent's will was admitted to probate on October 23, 1953 in *309 a New Jersey court, the state of her domicile at the date of death; her brother Leonard N. Block and her husband Alfred Roberts became co-executors. In the New Jersey Transfer Inheritance Tax Return, dated June 24, 1954, which was filed by the co-executors, the decedent's total holdings of Wernet common and preferred stock wes valued at $805,119.17. The return was audited, and New Jersey inheritance tax liability appears to have been finally determined upon the basis of a valuation of $1,101,300 for such stock. Roberts and Leonard N. Block, as coexecutors, also filed the United States Estate Tax Return in respect of Mrs. Roberts' estate on January 5, 1955; and in that return the total value of the decedent's common and preferred stock of Wernet was reported at $805,119.17. During the audit of that return, controversy arose between representatives of the estate and representatives of the Internal Revenue Service as to the valuation of the Wernet stock. The Internal Revenue examining agent proposed an aggregate value of $1,420,472.03. As a result of arms' length negotiations between representatives of both sides, a valuation of $1,249,375 was finally agreed upon in late 1957 in respect *310 of the 12,236.67 shares of Wernet preferred and 623.33 shares of Wernet common owned by the decedent at the date of her death, and Federal estate tax liability was determined on that basis. 254 On January 17, 1957, the outstanding shares of Wernet were recapitalized, with the result that each share of common was exchanged for 30 shares of class A common and 30 shares of class B common. The estate thus received 18,700 shares of class A common and 18,700 shares of class B common. Also, between January 1, 1957 and March 18, 1958, the date of final accounting for the estate, it disposed of 9,600 shares of the preferred - 5,000 shares were distributed to a so-called marital trust for the benefit of decedent's husband, and 4,600 shares were redeemed to pay estate taxes pursuant to section 303 of the 1954 Code. On March 18, 1958, the estate distributed to each of the petitioners, residuary legatees under the decedent's will, one-third of the estate's remaining shares of Wernet - i.e., it distributed to each trust 6,233.33 shares of class A common, 6,233.33 shares of class B common, and 878.89 shares of preferred. Thereafter, on November 7, 1961 each petitioner received 3,333.59 additional *311 shares of preferred which had been distributed as a dividend on its common of both classes. On June 25, 1962, pursuant to the terms of the decedent's will, one of the petitioners (the trust for William B. Roberts) distributed one-third of the principal to the beneficiary, thus reducing the holdings of Wernet stock in that trust. Also, during 1963, Wernet declared another dividend on its common payable in its preferred stock. As a consequence of the foregoing, the petitioners on July 12, 1965, owned shares of stock in Wernet as follows: Keith's Trust
John's Trust
William's
Class A common
6,233.33
6,233.33
4,158.3
Class B common
6,233.33
6,233.33
4,158.3
Preferred
7,546.06
7,546.06
5,056.35
It appears that about 18 months or so after the decedent's death an acrimonious personal relationship had developed between the decedent's husband and members of the Block family. That relationship persisted and there was considerable disharmony between Roberts and Leonard N. Block, trustees of the petitioner trusts; as a result, in May 1963, the National Newark & Essex Bank was substituted as a trustee in place of Leonard N. Block in all three trusts. *312 Meanwhile, various efforts were made on behalf of the trusts to dispose of their interests in Wernet, and, on July 12, 1965, petitioners sold all their Wernet holdings to the corporation itself. By July 12, 1965, the value of the Wernet shares had increased substantially, and on that day the trusts for Keith and John each received $3,594,166.67 for the Wernet shares which they then owned, and the trust for William received $2,399.940.34 for its shares. In the Federal income tax returns for the fiscal year ending September 30, 1965 filed by the trusts for Keith and John, the "cost" of the Wernet shares (which was not broken down as between the two classes of common and the preferred) was stated by each to be $894,555.67, and such "cost" in the return for William's trust was stated to be $596,793.87. In determining the deficiencies herein, the Commissioner determined that the fair market value of all the Wernet shares owned by the decedent at the date of death was $1,249,375, that the allocable portion thereof in respect of the shares distributed to each of the three trusts was $112,458.33, that such amount was the proper basis for determining gain on sale of the shares held by *313 the trusts for Keith and John, and that such amount as adjusted to reflect the distributions by William's trust was the proper basis for determining gain on sale of the shares held by that trust. The trial was devoted entirely to the question of the fair market value of all the common stock (623.33 shares) and all the preferred stock (12,236.67 shares) owned by the decedent at her death, with the understanding that the Court would make findings as to the aggregate values of such shares, leaving it to the parties to make appropriate allocations to the various trusts, taking into account the stock splits, stock dividends, and distributions by William's trust. As already indicated, the Court announced its findings at the conclusion of the trial, and we now formally find as a fact that the decedent's 623.33 shares of common stock of Wernet had a fair market value on October 10, 1953 of $500,000, that her 12,236.67 shares of Wernet preferred stock on that date had a fair market value of $710,000, and that the total fair market value of her holdings of both classes of stock on that date was thus $1,210,000. Decisions will be entered under Rule 50. 255 Footnotes
1. Cases of the following petitioners are consolidated herewith: Trust U/W of J. B. Roberts F/B/O - John P. Roberts; National Newark & Essex Bank and Alfre d Roberts, Co-Trustees, docket No. 1834-68; and Trust U/W of J. B. Roberts F/B/O - William B. Roberts; National Newark & Essex Bank and Alfred Roberts, Co-Trustees, docket No. 1835-68.↩